PRINCESS E. L. LINGHAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Lingham v. Commissioner
Docket No. 8209-72
United States Tax Court
T.C. Memo 1974-303; 1974 Tax Ct. Memo LEXIS 18; 33 T.C.M. (CCH) 1402; T.C.M. (RIA) 740303; December 4, 1974, Filed. *18 Princess E. L. Lingham, pro se. Jeffrey L. Davidson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1969 in the amount of $2,008.01. The issues for decision are: (1) Whether petitioner is entitled to deduct $6,000 in 1969 because of a loss she sustained in the early 1950's in connection with an interest in a piece of property. (2) Whether petitioner is entitled to a bad debt deduction in 1969 of $35. (3) Whether petitioner is entitled to deductions for (a) storage expenses, (b) medical and dental expenses, (c) charitable contributions, and (d) use of home as office in excess of the amounts allowed by respondent in his notice of deficiency. FINDINGS OF FACT Petitioner whose legal residence was in New York, New York at the time of the filing of the petition in this case, filed an individual Federal income tax return for the calendar year 1969 which was the subject of an audit by the office of the Internal Revenue Service in New York, New York.
In approximately 1950 petitioner acquired an interest in a house and some land in Boston, which *19 she planned to use for operation of a nursery school. While petitioner was in a hospital, in some manner she lost her interest in this property, the loss occurring either in 1952, 1953, or 1955. Starting sometime in the late 1950's petitoner claimed deductions on her income tax returns on account of these losses in amounts ranging from $1,200 to $2,000, but these claimed losses were disallowed in each year they were claimed upon respondent's audit of her return. On her return for the calendar year 1969 petitioner claimed under the designation "House Loss" $6,000 with an explanation attached to her return which stated in part: Please note that the reason the House loss prorata has been increased is that Internal Revenue has not made an allowance for the loss of the Boston property while I was in the hospital or shortly thereafter * * * During the year here in issue and for some years prior thereto petitioner was a public school teacher in the elementary schools, employed by the Department of Education of the city of New York. During 1968 petitioner's school children were making sales of candy and a person by the name of Mrs. Haney did not pay for certain candy, and petitioner *20 paid for the candy Mrs. Haney had taken. On her income tax return for the calendar year 1969 petitioner claimed $35 under the designation, "Debt. Mrs. Haney." During the year 1969 petitioner had certain library books in storage. On her income tax return for that year she claimed under the designation, "Books & Business storage," the amount of $700. During 1969 petitioner had some amount withheld from her salary by the Department of Education for payments on Blue Cross and Blue Shield hospital insurance. In addition, petitioner paid a total of $531.12 in 1969 to Gold Star Plan - Insurance, Mutual of Omaha, National Liberty Life Insurance Company, and an insurance agent by the name of Albert H. Wohlers. All of these amounts were paid on policies that covered hospital insurance, as well as health, accident, and life insurance. Approximately $300 of the total amount was for the hospital and medical coverage. In 1969 petitioner paid $40 in doctors' bills and $474.48 for drugs including vitamins which were prescribed for her by her doctor. On her income tax return for the calendar year 1969 petitioner claimed as "one half of insurance premiums for medical care (but not more than *21 $150)," $150. She claimed as "medicine and drugs" $534.33 less $141.66 for the one percent deduction required to be taken leaving $392.67 which she included with an additional amount of $381.12 under the designation, "Itemize other medical and dental expenses (include balance of insurance premiums for medical care not deducted on line 1)." Petitioner showed $773.79 as the total amount of medical expenses prior to the 3 percent of adjusted gross income adjustment required. Petitioner on her income tax return for 1969 claimed charitable contribution deductions of $762.42, composed of $250 contributed to St. Charles Barromeo Roman Catholic Church, and $512.42 designated as "Miscellaneous; charities" with a number of items listed thereunder. During 1969 petitioner paid by check to St. Charles Barromeo Church $230.50 and paid by check to St. Labre Indian School $114, and in addition drew checks to various miscellaneous charitable organizations such as the New York Tuberculosis and Health Association and the United Fund of Greater New York in a total amount of $53.45. During the year 1969 petitioner lived in a cooperative apartment on Riverside Drive West by the name of 158th Street *22 and Riverside Drive Housing Co., Inc. (River Terrace Cooperative).Petitioner owned 195 shares of stock in the cooperative for which she had paid approximately $2,000 sometime in the mid or late 1950's. Petitioner in 1969 made payments for maintenance, utilities, real estate taxes, mortgage and interest payments in a total amount of $1,454. Of this amount which petitioner paid, $151.29 represented real estate taxes which petitioner deducted on her Federal income tax return and which deduction was not disallowed by respondent in his notice of deficiency, and included mortgage interest of $698.86 which petitioner deducted on her 1969 income tax return as "Interest expense - Home mortgage," which deduction was not disallowed by respondent in his notice of deficiency. The cooperative in which petitioner lived was a low income family type cooperative, and any person living there whose income exceeded a certain level was required to make an additional payment as a "surcharge" because of having income in excess of the amount permitted for a person living in the low income cooperative. Petitioner in some years had income sufficient that she was required to pay a surcharge. During the year *23 1969 petitioner taught in a school district where teachers were not encouraged to come before school hours began or to stay after school hours because there might be danger to their life or well-being if they were in the building when school was not in session. It was therefore necessary for petitioner to prepare her school lessons and do other work in connection with her employment as a teacher in her home. Generally, petitioner spent from 20 to 30 hours a week doing work in her home in connection with her employment as a teacher. On her income tax return for the year 1969 petitioner claimed a deduction of $727 under the designation, "Office Use of Home." Respondent in his notice of deficiency disallowed the "house loss" and the "Debt. Mrs. Haney" claimed by petitioner in their entirety and disallowed in part the deductions claimed by petitioner for books and business storage, medical expenses, charitable contributions, and office use of home with the following explanation: It is determined that the following deductions claimed on your return be adjusted for lack of substantiation, as indicated below: Claimed
Allowed
Disallowed "House Loss"
$6,000.00
$ -0-
$6,000.00
Debt-Mrs. Harvey [ sic ]
35.00
-0-
35.00
Books and business storage
700.00
303.00
397.00
Medical expenses
498.80
150.00
348.80
Contributions
762.42
438.37
324.05
*24 (f) It is determined that the deduction for the portion of your residence used for professional purposes be limited to $102.57. Amount claimed
$727.00
Allowed
102.57
Disallowed
$624.43
OPINION The issues here are purely factual. Some of these same issues have been involved in previous litigation between petitioner and respondent. See Princess E. L. Lingham v. Commissioner, 410 F.2d 754 (C.A. 2, 1969), affirming per curiam a Memorandum Opinion of this Court, and Lingham-Pritchard v. Commissioner, 347 F.2d 377 (C.A. 2, 1965), affirming per curiam a Memorandum Opinion of this Court. There is nothing in this record to show that petitioner is entitled to the claimed $6,000 deduction which she took for a "house loss." [2] If, in fact, petitioner did sustain any loss in 1952, 1953, or 1955 on a house and lot in Boston, the record does not show the amount of such loss or its connection, if any, with petitioner's nursery school business. However, even if some loss were shown, there would be no basis for allowing any deduction for such a loss in the year 1969. *25 The record also is insufficient to support petitioner's claimed bad debt deduction of $35 which she testified arose because a Mrs. Haney did not pay for some candy she either bought or took to sell in connection with the sale of candy by petitioner's pupils. Apparently, the candy transaction occurred in 1968 and petitioner has offered no evidence to show that she is entitled to a bad debt deduction from this transaction in 1969. Petitioner offered no evidence at all to show that she had deductible expenses for books and business storage in excess of the $303 allowed by respondent. Petitioner has shown that she expended $474.48 for drugs in the year 1969 and $40 for doctors' bills, and respondent at the trial conceded that petitioner made these expenditures and is entitled to a deduction therefor to the extent, if any, petitioner's total deductible medical expenses including costs of drugs in excess of one percent of her adjusted gross income exceeds the adjustment of 3 percent of adjusted gross income.Respondent argues that petitioner has not shown that she spent more than $300 for hospital insurance. Even if this were a fact, respondent, by allowing only the $150, apparently *26 has not allowed the extra $150 as a part of itemized medical expenses. Clearly, the medical insurance premiums paid in excess of the $150 which is deductible without limitation is a part of medical expenses which are subject to the limitation of being allowable to the extent they exceed 3 percent of adjusted gross income. However, in our view petitioner has shown more than $300 of payment for premiums for medical care insurance. Although the record is not as clear as it might be, we conclude that she has shown a minimum of $400 of such payments. In addition to payments which she made to insurance companies, some amount was withheld from her salary which apparently respondent did not consider in making his adjustment. We therefore conclude that petitioner is entitled to have included in itemized medical and dental expenses the amount of $250 for insurance premiums for medical care in addition to the $150 respondent allowed as being deductible without the 3 percent limitation. Whether the payment by petitioner for medical insurance is sufficient to result in any allowable deduction is a matter of computation. Petitioner testified that in addition to the charitable contributions *27 she made by check, she made some cash charitable contributions. The evidence shows that petitioner made charitable contributions of $397.95 by check and that respondent allowed her deductions for charitable contributions of $438.37. There is nothing in the record to shw that petitioner's cash contributions were in excess of the amount allowed by respondent in excess of her contributions by check. Petitioner computed her claimed deductions for business use of her home on the basis of one-half of the monthly payments she made to the cooperative. However, the record shows that included in these payments were interest and taxes in a total amount of $850.15 which petitioner deducted on her return as real estate taxes and mortgage interest. This would leave a balance of payment for utilities, upkeep, and repairs of $604. In addition to her utility and upkeep costs, petitioner would be entitled to consider as the cost of her occupancy of her apartment depreciation, if any, on her initial payment and apparently a part of the surcharge, if any, which she was required to pay in 1969 since the surcharge appears to be in the nature of rent rather than investment. Petitioner has not shown *28 what her depreciation, if any, was, or whether any surcharge was actually paid by her in 1969. However, she has shown that her home was used a substantial part of the time that she was there, and not sleeping, for school work.As best we can judge from the evidence, the apartment was a small apartment and therefore the portion used for school work was a substantial part of the apartment area. On the record as a whole, we conclude that approximately one-third of the upkeep and utility payments of $604 made by petitioner should be allocated to her business use of her apartment, and therefore conclude that she is entitled to a $100 deduction for home use of her apartment in addition to the $102.57 allowed by respondent. Decision will be entered under Rule 155. Footnotes
2. For the years 1964 and 1965 petitioner claimed deductions of $1,800 and $2,000, respectively, for this same loss on property in Boston, and in our memorandum opinion, Princess E. L. Lingham, (T.C. Memo. 1967-228, aff'd. per curiam 410 F.2d 754↩ (C.A. 2, 1969), we sustained respondent's disallowance of this claimed loss pointing out that even if she had established such a loss, she cannot resurrect it for tax purposes 11 years after the fact.